UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:11-cr-117-T-23AAS
 8:14-cv-184-T-23AAS

ASIEBA IMADJAM THOMAS
_____/

**O R D E R**

Thomas moves under 28 U.S.C. § 2255 (Doc. 1) to vacate his sentence and challenges the validity of his convictions (1) for two counts of possession with the intent to distribute five grams or more of cocaine base within 1,000 feet of a public school and (2) one count of possession with the intent to distribute five grams or more of cocaine base. Thomas serves concurrent terms of 212 months imprisonment as a career offender for each count. Thomas pleaded guilty without a plea agreement. On direct appeal Thomas unsuccessfully challenged the reasonableness of the sentence. (Doc. 72) This action proceeds under Thomas's second amended motion to vacate. (Doc. 35) The United States contends that three grounds are time-barred and that the remaining ground lacks merit.

**I.  STATUTE OF LIMITATION**

"A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of (1) the date on which the judgment of conviction becomes final . . . ." 28 U.S.C. § 2255. Thomas's conviction was final on April 1, 2013, when his petition for the writ of *certiorari* was denied. (Doc. 74 in

11-cr-117)  See *Jones v. United States*, 304 F.3d 1035, 1038 fn.5 (11th Cir. 2002) ("[A] conviction is final on the day that the Supreme Court denies a convicted defendant's *certiorari* petition or renders a decision on the merits.").  Consequently, Thomas had until April 1, 2014, to challenge his conviction or sentence under Section 2255.

Thomas's initial motion to vacate under Section 2255 (Doc. 1), which was timely filed in January 2014, asserts four grounds for relief.  The amended motion (Doc. 14), which was filed in May 2014 after the limitation expired, asserts five grounds for relief.  Thomas's second amended motion (Doc. 35), which was filed in 2015 and which is the motion that governs this action, asserts four grounds for relief.  The United States contends both that only ground four relates back to a ground asserted in the timely, initial motion and that grounds one, two, and three are time-barred.

Because the second amended motion to vacate was filed after the limitation expired, a ground that does not "relate back" to a ground asserted in the initial motion to vacate is untimely.  In *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000), *cert. denied,* 532 U.S. 907 (2001), the court agreed with other circuits holding "that for an untimely § 2255 claim to 'relate back' under Rule 15(c), the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings."  To relate back to the timely filed claim, the new claim must arise from the "same set of facts," not from separate conduct or a separate occurrence in "both time and type." *Davenport*,

217 F.3d at 1344. *See also Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003) ("Congress intended Rule 15(c) to be used for a relatively narrow purpose; it did not intend for the rule to be so broad to allow an amended pleading to add an entirely new claim based on a different set of facts.").

The timely, initial motion to vacate asserts four grounds of counsel's alleged ineffectiveness, specifically, counsel's failure to object to the following:

1. the alleged ineligibility of a particular state conviction to qualify him for a career offender sentence;
2. the constitutionality of 21 U.S.C. § 841 as an intrusion upon the state's rights under the Tenth Amendment;
3. the grand jury process was not neutral and impartial because "he was not present during the decision making process;" and
4. the district court's relying on facts not found by a jury to increase the sentence.

The second amended motion to vacate asserts four grounds of counsel's alleged ineffectiveness, specifically, counsel's failure to object to the following:

1. the allegedly fraudulent indictment because only the foreman signed the indictment and not all twelve members of the grand jury as proof that all twelve members concurred "on the essential elements of the indictment;"
2. the constitutionality of 21 U.S.C. § 841 as an intrusion upon the state's rights under the Tenth Amendment;[1]
3. the absence of a quorum when Congress considered Public Law 80-772 and the omission of both the Speaker of the House and the President's signature on the bill;[2] and

---

[1] Although phrased differently in the second amended motion, the claim in ground two is principally the same as ground two in the initial motion to vacate.

[2] Thomas represents that Public Law 80-772 included what was codified as 18 U.S.C. § 3231, which states, "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States. Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."

4. the district court's relying on facts not found by a jury to increase the sentence.[4]

Under *Davenport*, ground two "relates back" to the timely initial motion to vacate, the United States concedes that ground four "relates back," and grounds one and three are new claims unrelated to a ground in the timely initial motion to vacate. Consequently, grounds one and three in the second amended motion to vacate are time-barred, and grounds two and four are entitled to a review on the merits.

## II. FACTS[5]

> On March 12, 2010, undercover law enforcement (UCs) purchased cocaine base (herein after "crack cocaine") from Asieba Thomas. They were placed in contact with him and he negotiated with them for the sale of half an ounce of cocaine to them. The UCs bought the crack cocaine from Thomas at the Liberty gas station at 7002 56th Street North, Tampa, Florida, which is within 1,000 feet of King High School. There, Thomas sold 17.4 grams of cocaine base to the UCs for $500. This was the weight of the crack at the scene. The Florida Department of Law Enforcement (FDLE) tested a sample of that crack cocaine, determined that it was, in fact, cocaine base, and, on September 24, 2010, the weight of the sample was 5.8 grams.
>
> On May 25, 2010, UCs, again, purchased crack cocaine from Thomas. They contacted him and negotiated with Thomas to purchase from him a quarter ounce of crack cocaine. The UCs bought the crack cocaine from Thomas at a car wash located at 5505 East Sligh Avenue, Tampa, Florida. This is within 1,000 feet of King High School. Thomas tried to sell the UCs short weight. They renegotiated the price. The UCs bought 8.8 grams of cocaine base from Thomas for $225. This was the weight of the crack at the scene. The FDLE tested the crack cocaine,

---

[4] Although phrased differently in the second amended motion, the claim in ground four is principally the same as ground four in the initial motion to vacate

[5] This summary of the facts derives from the "Notice of Essential Elements, Penalties, and Factual Basis" (Doc. 26), which Thomas accepted as true when he pleaded guilty. When asked if he had "any disagreement with those facts, Thomas responded,"No, ma'am," and stipulated to the accuracy of the facts. (Doc. 49 at 65–66)

> determined that it was, in fact, cocaine base, and, on September 24, 2010, the weight of the cocaine base was 5.5 grams.
>
> On June 15, 2010, the UCs, again, purchased crack cocaine from Thomas. They contacted Thomas and met him at Tally Ho's Pub located at 7402 North 56th Street, Tampa, Florida. The UCs bought 16 grams of cocaine base from Thomas for $505. This was the weight of the crack at the scene. The FDLE tested the crack cocaine, determined that it was, in fact, cocaine base, and, on September 24, 2010, the weight of the cocaine base was 13.0 grams.

### III. GUILTY PLEA

Thomas pleaded guilty and accepted the above factual basis. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), holds that a guilty plea waives a non-jurisdictional defect. Accord United States v. Patti, 337 F.3d 1217, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all non-jurisdictional defects in the proceedings."). This waiver of rights precludes most challenges to the conviction. A guilty plea waives a claim based on a pre-plea event, including a claim of ineffective assistance of counsel. *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). Thomas's guilty plea waived neither of the remaining grounds because both grounds allege that trial counsel was ineffective, not at a pre-plea event but at sentencing.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Thomas asserts two claims of ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d

384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim, as *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Thomas must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Thomas must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

## V. GROUNDS FOR RELIEF

### Ground Two:

Thomas alleges that counsel rendered ineffective assistance by not "objecting to [the] Government injuring [him] by incarcerating him more than four times over the sentence [he] would have received if the local authorities would have been left to punish [a] crime that is local in nature," which he contends violated his Tenth Amendment rights.[6] Thomas recognizes that "the government has authority under statute 841 to regulate drug activity as it relates to and affects Interstate Commerce (that is fine but that is not what petitioner is arguing here)." (Doc. 38 at 7) Instead, Thomas contends that a "law or statute that is used in excess of congress[ional]

---

[6] "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively." Thomas also lists the Fifth, Sixth, and Fourteenth Amendments, but each is tied to his claim that counsel rendered ineffective assistance by not presenting his claim under the Tenth Amendment. (Doc. 35 at 20)

enumerated powers (which here congress gives no authority to <u>injure</u> an individual) then this is a Tenth Amendment violation." (Doc. 38 at 7) (underlining original) Thomas's argument is meritless.

Thomas is emphatic that his claim "is purely about injury and has nothing to do with interstate commerce." (Doc. 35 at 22) Thomas relies upon *Bond v. United States*, 564 U.S. 211, 225–26 (2011), which recognizes that a party who shows "an actual or imminent harm that is concrete and particular, fairly traceable to the conduct complained of, and likely to be redressed by a favorable decision . . . is not forbidden to object that her injury results from disregard of the federal structure of our Government" by asserting a federalism claim under the Tenth Amendment. In short, *Bond* holds that an injured party might have standing to assert a claim under the Tenth Amendment if the party has a concrete injury. Thomas misunderstands *Bond*, which might allow Thomas standing to present a claim for relief but which neither creates a claim for relief nor, to say the least, ensures Thomas success. In fact, many federal statutes, when enforced, "injure" someone (in order to create an offsetting benefit elsewhere). The essential purpose of a law is to proscribe conduct and to create the prospect of enforcement by coercion.

Also, contrary to his contention, Thomas's argument depends on the Commerce Clause. *Bond* permits an individual to present a claim for injury caused by governmental action, but the governmental action must exceed congressional

authority. Thomas focuses only on the "injury" component and ignores the requirement that the statute exceed congressional authority.

Thomas pleaded guilty to three counts of possession with the intent to distribute cocaine, a violation of 21 U.S.C. § 841. The government's regulation of controlled substances under Section 841 is within — not in excess of — congressional authority, as *United States v. Owens*, 996 F.2d 59, 61 (5th Cir. 1993) (italics original), explains:

> [W]e hold that Owens' prosecution and convictions under 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, and 18 U.S.C. § 924(c) do not run afoul of the Tenth Amendment. Each of the provisions is a valid exercise of Congress' commerce power, even though no specific nexus with interstate commerce is required for conviction. Because these provisions are valid exercises of Congress' commerce power, they cannot, under *Lopez,* violate the Tenth Amendment. Contrary to Owens' suggestion, then, there was a "federal basis" for his prosecution: Congress has validly determined that, in order to control *inter*state drug activity, it must be able to punish *intra*state drug activity.

*Cf. United States v. Gibson*, 615 F. App'x 619, 620 (11th Cir. 2015) (stating that, because criminalizing the possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) "is a valid exercise of Congress' Commerce Clause power, the statute does not violate the Tenth Amendment."), *cert. denied*, 136 S. Ct. 2484 (2016). Trial counsel was not ineffective for not asserting an objection under the Tenth Amendment, and, as a consequence, Thomas is entitled to no relief under ground two.

**Ground Four:**

Thomas alleges that counsel rendered ineffective assistance by not objecting to the "misapplication of the modified categorical approach to the Petitioner" and, had counsel objected, Thomas "would not have been enhanced to a career offender . . . ." (Doc. 35 at 27) Thomas contends that his two earlier drug convictions do not qualify him for a career offender sentence under Section 4B1.1, United States Sentencing Guidelines. Thomas's underlying premise, as expressed in the following argument (Doc. 38 at 11), is faulty:

> In order to enhance petitioner for a prior conviction according to *Descamps v. United States*, 133 S. Ct. 2276 (2013), the prior statute of conviction[,] when the modified categorical approach is used, has to be the same or narrower than the generic statute. In the instant case the modified categorical approach cannot be applied here because the Florida Statute 893.12 is simply broader than the federal statute.

Thomas believes (albeit erroneously) that Florida's controlled substances statute, Section 893.13, is broader than the federal statute because "[n]o where in statute 21 U.S.C. sec. 841 does it state a person has to know the illicit nature of the substance as in Fla. Stat. 893.13. Therefore making Fla. Stat. 893.13 <u>broader</u> than the analogous 841 federal statute." (Doc. 38 at 11) (underlining original) Thomas is correct that a "controlled substance offense" under Section 4B1.2(b) does not require that the earlier conviction include knowledge of the illicit nature of the substance. *See United States v. Smith*, 775 F.3d 1262, 1268 (11th Cir. 2014) (The definition of a "controlled substance offense" does not "require[] that a predicate state offense include[] an element of *mens rea* with respect to the illicit nature of the controlled substance."), *cert. denied*, 135 S. Ct. 2827 (2015). Thomas's argument fails because,

- 10 -

contrary to his belief, Florida's statute likewise does not require knowledge of the illicit nature of the substance. Although *Chicone v. State*, 684 F.3d 736 (Fla. 1996), and *State v. Scott*, 808 So. 2d 166 (Fla. 2002), interpreted Florida's statute as requiring knowledge, in 2002 Florida's Legislature abrogated those cases by amending the statute to remove knowledge of the illicit nature of the substance as an element of an offense under Section 893.13. "The Legislature finds that the cases of *Scott v. State* and *Chicone v. State*, holding that the state must prove that the defendant knew of the illicit nature of a controlled substance found in his or her actual or constructive possession, were contrary to legislative intent." Fla. Stat. 893.101(1). Trial counsel was not ineffective for not challenging Thomas's prior convictions as qualifying under him as a career offender, and, as a consequence, Thomas is entitled to no relief under ground four.

Accordingly, grounds one and three are time-barred, and grounds two and four are **DENIED**. The clerk must enter a judgment against Thomas, close this case, and enter a copy of this order in the criminal action.

## DENIAL OF BOTH CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Thomas is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must

first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Thomas must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Thomas is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Thomas must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 1, 2019.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE